[706 NYS2d 714]

In the Matter of JAY CHATARPAUL (Admitted as JAY JASON CHATARPAUL), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, April 24, 2000

### APPEARANCES OF COUNSEL

*Robert H. Straus,* Brooklyn (*Melissa D. Epstein* of counsel), for petitioner.

*Joseph A. Baum,* Flushing, and *Stephen J. Singer,* Kew Gardens, for respondent.

### OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition containing 12

charges of professional misconduct, which, in his answer, he admitted in part and denied in part. After a hearing, the Special Referee sustained Charges One through Ten and failed to sustain Charges Eleven and Twelve. The Grievance Committee now moves to confirm the report of the Special Referee insofar as it sustained Charges One through Ten and to disaffirm the report insofar as it failed to sustain Charges Eleven and Twelve. The respondent cross-moves to confirm the report insofar as it failed to sustain Charges Eleven and Twelve and to disaffirm the report insofar as it sustained Charges One through Ten.

Charges One through Twelve are based on the following factual allegations:

1. On or about January 7, 1998, the respondent sent or caused his office to send a letter to his client Sulaiman Ahmad concerning a fee dispute.

2. The letter was written on the respondent's office letterhead, identified as "The Law Offices of Jay Chatarpaul."

3. The purported signature on the letter was that of Robendranauth (Rob) Ramphul, who was identified as a law graduate.

4. Mr. Ramphul graduated from law school, but was not admitted to the practice of law in the State of New York.

5. In an effort to collect payment for legal services purportedly rendered on Mr. Ahmad's behalf, the letter implied that confidences and privileged information would be used against Mr. Ahmad as follows: "We will give you until *January 15, 1998*. This will be our *last contact* with you. We are trying to avoid you the pain and suffering of going through all of this. Mr. Ahmad, what you have done is very *stupid*. We are still your attorney. Your case is *not over yet*. Your case is still open. Your fingerprints will come to us within a few months. We have your rap sheets. We have your arrest record. We have your social security number. By the time you receive this letter, we will know where you work. We can subpoena your financial information from your credit card company. *Where will you run and hide?* If you honestly believe that moving to another state will keep you safe, well you are really stupid" (emphasis in original).

6. At or about the same time, the respondent's sister, Parbatie Ramdat, an employee in the respondent's office, but not a lawyer, went to Mr. Ahmad's home address at the request of the respondent.

7. Ms. Ramdat affixed to Mr. Ahmad's door an unsigned letter containing similar implied threats.

8. On or about January 19, 1998, the respondent sent a letter to Martha Sherman of the First Savings Bank. Annexed to the letter were documents containing confidential information pertaining to Mr. Ahmad's criminal case, including a copy of the complaint filed in the Criminal Court of the City of New York, a report prepared by the Criminal Justice Agency, and various motion papers.

9. Mr. Ahmad's case, which was still pending, was scheduled to be dismissed and the record sealed.

10. On January 16, 1998, Mr. Ahmad filed a complaint against the respondent with the petitioner Grievance Committee and enclosed the letter dated January 7, 1998.

11. The respondent provided the Grievance Committee with a written answer dated January 24, 1998 and a copy of the letter dated January 19, 1998.

12. In his answer, the respondent stated that it was his employee, Mr. Ramphul, who sent the letter dated January 7, 1998 to Mr. Ahmad because Mr. Ramphul was outraged by Mr. Ahmad's failure to pay his fee.

13. In an examination under oath before the Grievance Committee on March 5, 1998, the respondent testified that he, not Mr. Ramphul, drafted the January 7, 1998 letter, and that he directed Mr. Ramphul to sign it.

Charge One alleged that based on factual allegations 1 through 5, the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]).

Charge Two alleged that based on factual allegations 1 through 5, 12 and 13, the respondent failed to adequately supervise Mr. Ramphul, in violation of Code of Professional Responsibility DR 1-104 (c) (22 NYCRR 1200.5 [c]).

Charge Three alleged that based on factual allegations 1 through 5, 12 and 13, the respondent is responsible for Mr. Ramphul's misconduct, of which he knew or should have known, in violation of Code of Professional Responsibility DR 1-104 (d) (2) (22 NYCRR 1200.5 [d] [2]).

Charge Four alleged that based on factual allegations 1 through 5, 12 and 13, the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]).

Charge Five alleged that based on factual allegations 1 through 7, the respondent failed to adequately supervise the work of Parbatie Ramdat, in violation of Code of Professional Responsibility DR 1-104 (c) (22 NYCRR 1200.5 [c]).

Charge Six alleged that based on factual allegations 1 through 7, the respondent is responsible for the misconduct of Ms. Ramdat, of which he knew or should have known, in violation of Code of Professional Responsibility DR 1-104 (d) (2) (22 NYCRR 1200.5 [d] [2]).

Charge Seven alleged that based on factual allegations 1 through 7, the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]).

Charge Eight alleged that based on factual allegations 1 through 11, the respondent failed to preserve the confidences and secrets of a client, in violation of Code of Professional Responsibility DR 4-101 (b) (22 NYCRR 1200.19 [b]).

Charge Nine alleged that based on factual allegations 1 through 11, the respondent engaged in conduct that is prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge Ten alleged that based on factual allegations 1 through 11, the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]).

Charge Eleven alleged that based on factual allegations 1 through 13, the respondent gave false and misleading information to the Grievance Committee and engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]).

Charge Twelve alleged that based on factual allegations 1 through 13, the respondent gave false and misleading information to the Grievance Committee and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

Based on the respondent's admissions and the evidence adduced at the hearing, the Special Referee should have sustained all 12 charges of professional misconduct against the respon-

dent. Accordingly, the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted and the respondent's cross motion to confirm in part and disaffirm in part is denied.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider his youth and inexperience, the fact that he was in private practice for only six months at the time of the events in question, and the complainant's misconduct. The respondent contends that the sanction imposed should be limited to a public censure.

The respondent has no prior disciplinary history.

Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of three years.

MANGANO, P. J., BRACKEN, O'BRIEN, RITTER and S. MILLER, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted; and it is further,

Ordered that the respondent's cross motion to confirm in part and disaffirm in part the report of the Special Referee is denied; and it is further,

Ordered that the respondent, Jay Chatarpaul, is suspended from the practice of law for a period of three years, commencing May 24, 2000, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of three years, upon furnishing satisfactory proof that (a) during the said period he refrained from practicing or attempting to practice law, (b) he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see, 22 NYCRR 691.10), and (c) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Jay Chatarpaul, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.